UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

**BRUCE A. JACKSON,**  )
         Plaintiff,  )
v.  )   C.A. No. 05-11429 RWZ
  )
**LINDSAY NORMAN**, Individually  )
and in his former capacity as President of the  )
Massachusetts Bay Community College;  )
**PAULA GASTENVELD**, Individually  )
and in her former capacity as Vice-  )
President of Massachusetts Bay Community  )
College; **GHAZI DARKAZALLI**, Individually  )
and in his capacity as Dean at Massachusetts  )
Bay Community College; **THOMAS SABBAGH**,  )
Individually and in his former capacity as  )
Associate Dean at Massachusetts Bay  )
Community College; **LAURIE TAYLOR**,  )
Individually and in her capacity as Vice-President  )
of Massachusetts Bay Community College,  )
         Defendants.  )

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**

**I. Introduction and Procedural History**

Plaintiff Bruce A. Jackson ("Jackson") was a tenured faculty member at the Massachusetts Bay Community College ("the College"). Jackson was a member of a unit of faculty members represented by the Massachusetts Community College Council/Massachusetts Teachers Association ("the Union"). His employment was covered under the terms of a valid collective bargaining agreement ("CBA") between the Union and the Higher Education Coordinating Council. Defendant Lindsay Norman was President of the College. All other Defendants were officials at the College at all time pertinent to this action.[1]

---

[1] Lindsay Norman, President, Paula Gastenveld, Vice President, Ghazi Darkazalli, Dean, Thomas Sabbagh, Associate Dean, and Laurie Taylor, Vice-President.

**Facts**

1. Lindsay D. Norman ("Norman") was President of the Massachusetts Bay Community College, a State institution, from the Spring of 1999, until the Fall of 2005. Complaint ¶7.

2. Bruce Jackson ("Jackson"), until his dismissal, was director of a program in bio-technology. Id. at ¶6.

3. In the Spring of 2002, Norman apprised Jackson of his intention to terminate his employment. Id. at ¶ 14.

4. Pursuant to Article 14 of the Collective Bargaining Agreement ("CBA") between The Board of Higher Education (the "Employer"), a State Agency, and the Massachusetts Teachers Association / Massachusetts Community College Council (the "Association"), a meeting was held on June 28, 2002 as a first step in a process possible leading to termination of employment. Id. at ¶ 15. [2]

5. At the conclusion of the meeting, Norman presented Jackson with a letter advising him of his intention to recommend his dismissal, together with a package of supporting documents. Id.

6. The remaining steps in the process called for by the CBA were then carried out: a hearing chaired by the President, who is also the decision maker as to a recommendation for dismissal; the right to appeal such a recommendation, if made, to the State's Chancellor of Higher Education; and, if the negative recommendation is upheld, the initiation of arbitration of a grievance involving dismissal, in accordance with the rules of the American Arbitration Association. Id. at ¶ 16

---

[2] The CBA sets forth the process where dismissal may result. As set forth in the CBA, the first step is filing of charges relating to dismissal with the President of the College. CBA Section 15.02(1) "the President of the College shall notify the unit member that the unit member shall be recommended for dismissal and, if appropriate request is made, the dismissal shall be preceded by a discussion with the President of the College." Id. A copy of the CBA agreement is attached as Exhibit 1.

2

7.  The arbitration in this matter was held between March 12, 2003 and October 26, 2004.

8.  In a decision dated September 12, 2005 the arbitrator found that the College did not have just cause to dismiss Jackson and the matter was remanded for reassessment to the President of the College.[3]

9.  The Arbitrator retained jurisdiction in the matter in accordance with the parties' CBA, Article XV.

## Standard of Review

In considering a motion to dismiss, a court must take the allegations in the non-moving party's pleading as true and must make all reasonable inferences in favor of the non-moving party. Moghaddam v. Dunkin' Donuts, Inc., 295 F.Supp.2d 136, 138 (D. Mass. 2003), citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The non-moving party's pleading "should not be dismissed for failure to state a claim unless it appears beyond a doubt that [the non-moving party] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Id., citing Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 78 (1957). "A court's inquiry is a limited one, focusing not on whether the plaintiff will ultimately prevail but on whether the plaintiff should be entitled to offer evidence to support a claim." Id., quoting Canty v. Old Rochester Reg'l Sch. Dist., 54 F.2d 66, 68 (D.Mass. 1999).

As to Rule 12(b)(6), the court's inquiry is narrow; it must simply decide whether, from the allegations in the complaint, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." Cousin v. Sofono, Inc., 238 F.2d 357, 358 (D .Mass. 2003), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

---

[3] This decision was rendered after Plaintiff filed his Complaint in the instant case. A copy of the decision is attached as Exhibit 2.

3

Applying this low threshold standard to Jackson's complaint, it is clear that he has failed to state a claim for relief.[4]

## Statement of the Case

Plaintiff ("Jackson"), until his dismissal, was director of a program in bio-technology for students. Complaint ¶ 13. In the spring of 2002, Dr. Norman (defendant "Norman"), apprised Jackson of his intention to terminate his employment. Id. at ¶ 14. Pursuant to Article 15 of the Collective Bargaining Agreement (the "CBA"), between The Board of Higher Education (the "Employer"), a State Agency, and the Massachusetts Teachers Association / Massachusetts Community College Council (the "Association"), a meeting was held on June 28, 2002 as a first step in a process possibly leading to termination of employment. Id. at ¶ 15. The remaining steps in the process called for by the CBA were then carried out. Id. at ¶ 16.

The arbitration in this matter was held between March 12, 2003 and October 26, 2004. The Arbitrator's decision of September 12, 2005 found that the College did not have just cause to dismiss Jackson and the matter was remanded for assessment of the original decision by the President of the College. The Arbitrator retained jurisdiction in the matter in accordance with the parties' CBA, Article XV. The Arbitrator's decision was rendered after Plaintiff filed his Complaint in this case before this Court.

Plaintiff alleged in his Complaint that the second step in the process, the hearing chaired by the President, who also acted as judge and decision maker, resulted in a record so grossly prejudiced against Plaintiff as to constitute a violation of his due process rights under 42 U.S.C. § 1983 and the Federal and State Constitutions. Id. at ¶ 17. Plaintiff also alleges that the other defendants deliberately colluded and cooperated with the President in setting up and carrying out

---

[4]This litigant has filed a complaint in this Court, based on similar facts, in which a motion to dismiss was granted. This Court's Memorandum and Order of September 24, 2002, in the case of Jackson v. Norman, CA No.02-11525 GAO, is attached as Exhibit 3.

4

acts which were meant to justify his discharge. Id. Plaintiff requests that further proceedings be delayed until the final conclusion of the arbitration currently under way. Id. at ¶ 19. Plaintiff also requests that if the arbitrator's award is in his favor, and if due process violations as alleged are found, the damages be awarded sufficient to make him whole to the extent not covered by the arbitrator's award, and including attorney's fees, to the extent allowable pursuant to 42 U.S.C. § 1988. Id. at ¶ 20. On September 12, the Arbitrator issued an opinion finding no just cause to terminate Jackson and remanded the matter for assessment of the original decision . Exhibit 2. Pursuant to Article XV of the parties' CBA agreement the Arbitrator retains jurisdiction.

**Argument**

I.  **JACKSON CANNOT COMPLAIN OF A VIOLATION OF DUE PROCESS RIGHTS, WHERE THERE IS AN AVAILABILITY OF UNUSED ADMINISTRATIVE PROCESS.**

It is undisputed that tenured college professors have a property interest in continued employment for procedural due process purposes. Perry v. Sindermann, 408 U.S. 593, 601 (1972); Board of Regents v. Roth, 408 U.S. 564, 577 (1972). However, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional. What is unconstitutional is the deprivation of such an interest without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990), citing Parrat v. Taylor, 451 U.S. 527, 537 (1981); Carey v. Piphus, 43 U.S. 247, 259 (1978).

While the exhaustion of state remedies is not required for actions brought under 42 U.S.C. § 1983, availability of additional, unused administrative procedures is relevant to the due process inquiry. The First Circuit has held that plaintiffs "cannot complain of a violation

5

of procedural due process rights when [they] have made no attempt to avail themselves of existing state procedures. It is well settled that a claim of lack of available due process fails on the merits where there is a process available under state law." Blevens v. Town of Bow, N.H., 53 F.3d 327 (1st. Cir. 1995), citing Boston Environment Sanitation Inspectors Association v. City of Boston, 794 F.2d 12, 13 (1st Cir. 1986).

"The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 545 (1985), citing Arnett v. Kennedy, 416 U.S. 134, 170-171 (1974). To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee. Id.

Jackson is a faculty member subject to a collective bargaining agreement that provides for final and binding arbitration of grievances, including those involving termination. Plaintiff's discharge rights, as well as other rights with respect to his employment at the College, are subsumed within a valid and extant CBA. The discharge proceedings are fully grievable and arbitrable in accordance with the terms of the CBA. Here, plaintiff has a favorable Arbitrator's award that has been remanded to the College President for reassessment of the original decision. Exhibit 2. The Arbitrator retained jurisdiction pursuant to Article XV of the parties' CBA. Plaintiff has availed himself of that process. Plaintiff cannot now show that he was deprived of due process.

**II.    AS JACKSON CANNOT SHOW THAT HE LACKS ADEQUATE POST-DEPRIVATION REMEDIES, THERE IS NO VIOLATION OF THE RIGHT TO PROCEDURAL DUE PROCESS**

To establish a due process violation, Jackson must also show that he lacks adequate post-deprivation remedies for the alleged deprivation of his property rights.  See Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994) (no violation of right to procedural due process where adequate post-deprivation remedies are available).

Jackson asserts that he has been denied adequate termination due process rights.  The Supreme Court, in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985), set forth the minimum due process required prior to the termination of a tenured public employee: Due process requires "notice and opportunity to respond.... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 545. The due process clause, "does not require every procedural protection that may help; it simply requires that a private person have a basically fair opportunity to convince the decision-maker, by presenting proofs and arguments and replies to the arguments of others." Newman v. Burgin, 930 F.2d 955, 961 (1st. Cir. 1991).

Plaintiff claims that there is a violation of due process because the President who chaired the hearings was not an impartial decision-maker. Complaint at ¶ 17. Yet an employee facing discharge is not entitled to a wholly impartial decision-maker. See e.g. Acosta-Sepulveda v. Hernandez-Purcell, 889 F.2d. 9,12 (1st Cir. 1989) The First Circuit has stated that " pre-termination hearing may be before the employer" since the hearing only has to ensure that the employer "will be alerted to the existence of disputes about facts and arguments about cause and effect". Feliciano-Angulo v. Rivera-Cruz, 858 F.2d. 44 (1st. Cir.1988)

When a plaintiff alleges that the decision-maker is too biased to satisfy due process, he must "overcome a presumption that state administrators are fair and honest: the court must be convinced of a "risk of actual bias". O'Brien v. DiGrazia, 544 F.2d 543,547 (1st Cir. 1976)

(citing Withrow v. Larkin, 421 U.S. 35,47 (1975)). The fact that the person presiding over the termination proceeding is also the person who instigated and investigated the matter is not enough, by itself, to render him ineligible to the be the final decision-maker." Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40,43 (1st Cir. 1988)

Since the filing of this Plaintiffs' Complaint there has been an Arbitrators's Opinion and Award favoring Plaintiff, after 23 days of hearings. Exhibit 2. The Arbitrator has remanded this matter for reassessment to the College President and retains jurisdiction under Article XV of the parties' CBA. This entire process included grievance and arbitration procedures which have been held to satisfy due process requirements for public employees. Dykes v. Southeastern Pennsylvania Transportation Authority, 68 F.3d 1564, 1571 (1995)

### III. THE ACTIONS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED UNDER 42 U.S.C. § 1983 AND THE ELEVENTH AMENDMENT.

To the extent that these named defendants are sued in their official capacity, a state is not a "person" for the purposes of 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989). Further, "the Supreme Court has consistently held that the Eleventh Amendment protects an unconsenting state from suits brought by her own citizens as well as citizens of other states." Forte v. Sullivan, 935 F.2d 1, 2 (1st Cir. 1991), citing Edelman v. Jordan, 414 U.S. 651, 652-653 (1974).

The state itself and "arms" of the state receive immunity. Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority, 991 F.2d 935, 939 (1st Cir. 1993), citing PRASA v. M & E, 506 U.S. 139 (1993). Metcalf has articulated "areas, each of which can be mined for information that might clarify the institution's structure and function, and include:

> (1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees; (2) whether the agency's function is governmental

> or proprietary; (3) whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5)whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions.

Id., citing Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co., 818 F.2d 1034, 1037 (1st Cir. 1987). "It is, however, clear that all the pertinent factors have a common orientation: the more tightly the agency and the state are entangled, the more probable it becomes that the agency shares the state's Eleventh Amendment immunity." Id.

While state officials literally are persons, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989), citing Brandon v. Holt, 469 U.S. 464, 471 (1985). As such, it is no different form a suit against the State itself. Id., citing Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). "It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F.2d104, 108 (1st Cir. 1991), citing Will, 491 U.S. at 71.

If a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is bared from awarding damages against the state treasury even though the claim arises under the Constitution. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 919 (1984), citing Quern v. Jordan, 440 U.S. 332 (1979). Similarly, if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim. Id., citing Alabama v. Pugh, 438 U.S. 781 (1978) (*per curiam*). The Amendment thus is a specific constitutional bar against hearing even

9

*federal* claims that otherwise would be within the jurisdiction of the federal courts. Id., citing Monaco v. Mississippi, 292 U.S. 313, 322 (1934).

### IV. AS THE ONLY PERSON WITH AUTHORITY TO CONDUCT THE HEARING PURSUANT TO SECTION 15.02(6) OF THE CBA, NORMAN MUST DO SO UNDER THE RULE OF NECESSITY

The Rule of Necessity provides that judges may hear a case in which they have an interest where there is no provision for appointment of another judge. U.S. v. Mill, 449 U.S. 200, 223 (1980). This rule also applies to decision makers other than judges. This is precisely the situation here. The CBA sets forth procedures where dismissal is a possibility.

In clear and unambiguous terms, the CBA provides that "[t]he president of the College shall conduct the hearing…" Section 15.02(5). The right to proceed to arbitration provides the plaintiff with an adequate due process safeguard even if the hearing conducted by the Employer earlier had been inherently biased. Jackson, 721 F.2d at 933. Thus, even if Jackson could show that Norman is biased against him, the CBA provides no choice. See section II, page 8 for a discussion of impartial decision makers.

Mere involvement in a case or the taking of a position, even in public, does not automatically disqualify a decisions maker. Hortonville Joint School District No. 1 v. Hortonville Education Association, 426 U.S. 482, 493 (1976) ( school board, negotiating union contract with teachers and having authority to hire and fire, could dismiss and conduct dismissal hearing for teachers).

As the First Circuit has held "a plaintiff alleging impartiality must overcome the presumption that administrators are 'men of conscience and intellectual discipline, capable of judging a particularly controversy fairly on the basis of its own circumstances,' and must demonstrate an actual risk of bias or prejudgment. "Brasslett v. Cotta, 761 F.2d at 837, quoting

Withrow, 412 U.S. at 56. Plaintiff cannot meet this hurdle. Jackson has not presented any evidence that Norman is a constitutionally impermissible decision maker. Therefore, as a matter of necessity, Norman would have to conduct the hearing.

## Conclusion

For the reasons stated above, the court should dismiss plaintiff's complaint.

>
> RESPECTFULLY SUBMITTED,
> LINDSAY NORMAN, PAULA GASTENVELD,
> GHAZI DARKAZALLI, THOMAS SABBAGH,
> and LAURIE TAYLOR,
>
> By their attorneys,
>
> THOMAS F. REILLY
> ATTORNEY GENERAL
>
>  /s/ Teresa Walsh
> Teresa Walsh, BBO No. 550047
> Maite A. Parsi  BBO No.554009
> One Ashburton Place 18th Floor
> Boston, MA 02110
> 617-727-2200 x3335, 3322

Dated: October 5, 2005                    teresa.walsh@ago.state.ma.us


### CERTIFICATE OF SERVICE

I certify that I served the foregoing document on Bruce A. Jackson through his attorney, Sam Silverman, 18 Ingleside Road, Lexington, MA 02420 by first class mail on this _____ _____.

 /s/ Teresa Walsh
Teresa Walsh