UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRUCE JACKSON                                    CIVIL ACTION

V.                                               NO. 1:05-cv-11429 RWZ

LINDSAY NORMAN, Individually and in his former capacity as President of Massachusetts Bay Community College; PAULA GASTENVELD, Individually and in her former capacity as Vice-President of Massachusetts Bay Community College; GHAZI DARKAZALLI, Individually and in his capacity as Dean at Massachusetts Bay Community College; THOMAS SABBAGH, Individually and in his former capacity as Associate Dean at Massachusetts Bay Community College; LAURIE TAYLOR, Individually and in her capacity as Vice-President of Massachusetts Bay Community College

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO AMEND AND

OF MOTION FOR SUMMARY JUDGMENT

SUMMARY

1. The original complaint noted that the Arbitrator's Award was not yet available, and that the complaint was brought to preserve the rights of the Dr. Jackson. The Arbitrator's Award has now been made, concluding in favor of Dr. Jackson, the new President of the College has accepted the award and rescinded the dismissal of Dr. Jackson, so that the Arbitrator's Award is now final. The Award, however, provides only a partial remedy of that needed to make Dr. Jackson whole, and only in part considers the violation of his civil rights. Plaintiff now requests that the accompanying amended complaint be allowed. Furthermore, since there now exists considerable sworn testimony under oath with opportunity to cross-examine in the hearings before President Norman and in the arbitration hearings, and since the findings of fact, both explicit and implicit, by the arbitrator must be accepted for purposes of collateral estoppel, Plaintiff believes that there now exist sufficient material facts not in issue to justify

summary judgment.

2. A letter by the new President of the College, Dr. Joseph, subsequent to the earlier proceedings, carries an implicit threat of retaliation. A new count has been added for this new violation of Dr. Jackson's civil rights. A motion to add Dr. Joseph as a Defendant accompanies these motions. Should that motion be allowed Dr. Joseph will be added to the list of Defendants above.

3. Documents referred to in this Memorandum include three volumes of hearings before the President; results of the appeal before the Division of Employment and Training; and twenty-three volumes of arbitration hearings. All of these are available to Defendants. They have not been included here as attachments to reduce bulk. Plaintiff stands ready, however, if the Court so desires, to either include appropriate excerpts in a more extensive brief, or, in the alternative, to include the hearing transcripts as attachments. In this latter case some additional time will be needed to prepare the files in the appropriate format for electronic filing.

## FACTS; STATUS OF THE CASE

The facts and the status of the case are as given in the complaint and in the Arbitration Opinion & Award, dated September 12, 2005 (Defendant's Exhibit 2, hereinafter AA). The award included the findings that (1) "The College did not have just cause to dismiss the Grievant, Dr. Bruce Jackson"; and (2) "The President's decision to dismiss Dr. Jackson was arbitrary and unreasonable based on clear and convincing evidence."

## OVERVIEW

In the following I discuss first some threshold questions, then what is needed for due

process issues, then the specific issue of the constitutional need for an impartial arbiter at all stages of the process, and some additional sources of due process violations. Where pertinent, portions of the Plaintiff's Opposition to Defendant's Motion to Dismiss (hereinafter "Opposition") will be incorporated by reference into the present Memorandum.

THRESHOLD CONSIDERATIONS

STANDARD FOR MOTION FOR SUMMARY JUDGMENT. In a motion for summary judgment, *Barbour v. Dynamics Research Corp*., 63 F.3d 32, 36 (1st Cir. 1995):

> [The Court must] view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

ELEMENTS OF A §1983 ACTION. The two essential elements of a ' 1983 action are: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527; 101 S. Ct. 1908; 68 L. Ed. 2d 420 (1981). State employees act under color of state law when the conduct occurs in the course of performing an actual or apparent duty of his office.

EFFECTS OF ARBITRATION FINDINGS. In addition to the cases cited in "Opposition", incorporated here by reference, we add the following, from E*l Dorado Technical Services, Inc.*, v. U*nion General de Trabajadores de Puerto Rico*, 961 F.2d 317 (1st Cir. 1992):

[at 320] Although it may be possible to quibble over various facts found by the arbitrator (or implicit in his decision), the standard of review is unrelenting: as a general proposition, an arbitrator's factual findings are not open to judicial challenge. Even if the arbitrator was seriously mistaken about some of the facts, his award must stand. See *Air Line Pilots Ass'n Int'l v. Aviation Ass'n, Inc.,* 955 F.2d 90, 93 (1st Cir. 1992) ("Disputes of fact should have been resolved by the arbitrator, and may not be addressed by the . . . court, even if the court is convinced that the arbitrator committed serious error."); [*Georgia-Pacific Corp. v. Local 27, Etc.*, 864 F.2d 940, 944 (1st Cir. 1988)] ; *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir. 1977); see also [*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38-39, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987].

Note that the facts found by the arbitrator may be implicit as well as explicit. We emphasize here that in the following the arbitrator's findings of fact must be accepted for purposes of collateral estoppel.

COURT'S POWER TO MAKE WHOLE.  It is a well settled rule that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Barnes v. Gorman*, 536 U.S. 181, 189; 122 S. Ct. 2097; 153 L. Ed. 2d 230 (2002), citing *Bell v. Hood*, 327 U.S. 678, 684, 90 L. Ed. 939, 66 S. Ct. 773 (1946); see also *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66, 70-71, 117 L. Ed. 2d 208, 112 S. Ct. 1028 (1992).

Count 1

DUE PROCESS CONSIDERATIONS.

A. GENERALLY: ENTITLEMENT TO BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS. Where an individual has a property or liberty interest, as is true for Dr. Jackson,  a tenured college professor, he is entitled to both substantive and procedural due process before being deprived of either of these interests. For a fuller discussion see "Opposition", at 4-6.

B. ENTITLEMENT TO AN IMPARTIAL ARBITER.  Dr. Jackson was entitled, as a matter of substantive due process, to an impartial arbiter at all stages of the proceedings. The evidence presented at the arbitration hearings and the consequent findings of fact of the arbitrator demonstrate conclusively that Dr. Norman, as presiding officer  and as decision maker in the hearings leading to his dismissal, had pre-judged the matter and was by no means an impartial arbiter. For a full discussion see "Opposition," at 8-13.

C.  EVIDENTIARY ASYMMETRY CONSTITUTES A DUE PROCESS VIOLATION.  An asymmetrical application of evidentiary standards is unconstitutional. *Gray v. Klauser*, 282 F.3d 633, 641 (9th Cir. 2002). This conclusion is based on a Sixth Amendment right, in criminal cases, or on due process, applicable in all cases, or on both. *Id.* at 645. A ruling that imposes a greater evidentiary burden on a defendant without justification violates due process. *Id.* at 646. In *Klauser* the asymmetry arose in the judge's rulings on admissibility of hearsay evidence, and reversal resulted.

In the present case we present only one example. Throughout the hearing before President Norman College counsel often objected to attempts by Jackson to include favorable material as exhibits on the grounds that they did not relate to the specific charges against him, or that they dealt with earlier time periods.  These objections were uniformly sustained by Norman. On the other hand, College exhibits which included a good deal of material unrelated to the specific charges made, and which derived from much earlier time periods, were allowed, over objection, by Norman. That this material was unrelated to the specific charges brought against Jackson was admitted by College counsel: "The purpose of putting in papers which were relevant from the personnel file was not to disprove or prove the charges here today." (transcript of hearings before Norman, 3:288, hereinafter NH x:y, where x is the

volume number and y is the page number) On being challenged by Jackson's counsel as to the purpose, College counsel then stated that the material would be used by the President only if "the President determines that the charges have been proven." *Id.* Materials favorable to Jackson, on the other hand, were almost uniformly not allowed by Norman as exhibits. In addition, Jackson attempted to introduce material relating to the student grievance procedure other than that from the Student Handbook, especially an email outline of a revised procedure dated December 1, 2001. Norman refused to allow this procedure to be entered into the record or even discussed. (NH 1:204) Norman then further stated: "... what carries the weight is what I have approved as President of this institution." Norman, however, failed to show that this revised procedure had never been approved. Failure to follow appropriate procedures is both a due process and contractual violation, and Norman's rulings cutting off discussion on this point thus prevented a meritorious defense from being presented. His rulings, as presented above, were thus asymmetrical and unconstitutional.

In addition, of approximately 20 objections by college counsel, all but one were allowed, while, by contrast, of approximately the same number of objections by Jackson's counsel almost all were denied by President Norman, as hearing officer.

D. EQUAL PROTECTION.  The equal protection clause of the Constitution provides that similarly situated individuals must receive the same treatment. In the present instance Dr. Jackson was uniformly treated differently from others against whom complaints had been made. On the basis of student complaints against Dr. Jackson an investigation was instituted (outside of procedures mandated by the College's Student Grievance Procedures), and these complaints, together with a limited and perfunctory investigation by Dean Darkazalli and Associate Dean Sabbagh, served to provide a basis for dismissal. On the other hand several

equally important or even identical bases were not investigated at all. Here we note a few of these cases.

  (1)  Another faculty member, Dr. Sarmad Saman, had been assigned the Biotech laboratory for a class. Dr. Jackson happened to come upon this class and objected to its use on the basis of contamination of laboratory materials. No students were interviewed regarding this matter, though Dr. Jackson  provided an account by one. Dr. Jackson also provided a list of several OSHA violations. No investigation of these was carried out, other than asking Dr. Saman about his use of a water bottle. (Arbitration hearings, at 9:63ff, hereinafter AH x:y, where the x represents the volume number, and the y the page number).

  (2) Dr. Jackson was charged, in the case for dismissal, with using a syllabus at variance with the description of a course in the college catalog. Dr. Jackson and his colleague, Dr. Pansé, were replaced in teaching the program, by a single teacher with only a Master's degree. At the arbitration hearings it was brought out that this successor's syllabus was completely at variance with the description in the college catalog. Yet no investigation of this variance, which was sufficiently important in the eyes of the College to be one of five charges justifying the dismissal of Dr. Jackson, was ever carried out, nor was any action ever taken against the new teacher for this. (AH 9:67f)

  (3) A student complaint was made to Dr. Gastenveld about inappropriate remarks about females by a teacher, Dr. Nassif. No investigation was ever carried out of this matter, nor was any action taken against Dr. Nassif. (AH 13:72ff, especially 13:77)

        These cases are sufficient to illustrate the disparate behavior received by Dr. Jackson. But more important in this respect is the finding of the arbitrator, that in Dr. Jackson's case, "the focus of the investigation seemed to be one of building a case for dismissal, rather than

of ascertaining whether there was a problem and, if so, developing a plan to remedy it." (AA, at 42).

E. DR. JACKSON DID NOT EVEN RECEIVE PROCEDURAL DUE PROCESS.   In any event, Jackson did not receive adequate due process because he did not receive notice that his actions could result in his dismissal (AA, at 40). *Cotnoir*,  *Cotnoir v. University of Maine Systems and George Connick, et al.*, 35 F.3d 6 (1st Cir. 1994), is instructive in this respect, with several pertinent similarities to the present case. Cotnoir was a tenured professor at the University of Maine, Augusta, accused of misconduct. He was interviewed on these at different stages by several of the University staff, all recommending dismissal, but was never specifically told that the result of these investigations could result in his dismissal. Eventually Cotnoir brought an action under 42 U.S.C. §1983 alleging denial of procedural due process. Defendants then moved for summary judgment on the basis of qualified immunity, which the District Court denied. The Appellate Court noted (at 10):

> Qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [citations omitted]

 Further (*Id.*, at 10):

> The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard "at a meaningful time and in a meaningful manner."

The Court, (*Id.*, at 11), concluded that Cotnoir had not received meaningful notice that his alleged misconduct could result in dismissal. Furthermore (*Id.*, at 12):

> Where an employee is fired in violation of his due process rights, the availability of post-termination grievance procedures will not ordinarily cure the violation. … Thus, even where a discharged employee receives a post-termination hearing to review adverse personnel action, the pretermination hearing still needs to be extensive enough to guard against mistaken decisions, and accordingly, the employee is entitled

> to notice, an explanation of the employer's evidence, and an opportunity to present his side of the story. … If an employee is fired without these pre-termination protections, normally the constitutional deprivation is then complete.  [citations omitted]

Finally, since it was not reasonable for the defendants to believe that their actions satisfied minimum due process requirements, the denial of qualified immunity was justified.

The importance of this case for the present case is the finding of the arbitrator (*AA*, at 40) that "it cannot be said that the College had put Dr. Jackson on notice that his teaching methods … was [*sic*] inappropriate and, if continued, could result in discipline, including dismissal." Arguably, as noted earlier, this finding should have *res judicata* status.

## SOVEREIGN AND QUALIFIED IMMUNITY.

1. The discussion of immunity in "Opposition", pps. 13-16, is here incorporated by reference.

 2. To provide a conclusive demonstration that the College is not an arm of the state for purposes of immunity, we note that a primary element is whether the College can simply call on the public fisc, that is, the State Treasury. If not, it is not an arm of the state. In Dr. Joseph's letter of October 19, 2005 to Dr. Jackson the statement is made: "However, after a thorough review of this case, I have determined that it is not in the best interests of the College to expend further resources litigating this matter." This is a clear and unambiguous statement that the College must draw on its own resources in this matter, and is thus not an arm of the state.

3. In a case regarding Title II of the Americans with Disabilities Act, *United States v. Georgia*, U.S. Supreme Court, Nos. 04-1203 and 04-1236, Decided January 10, 2006, the Court noted that Congress has the power to enforce the provisions of the Fourteenth Amendment by creating private remedies against the States for actual violations of

Constitutional rights, and that in these cases a State's sovereign immunity could be abrogated. If a State's immunity can be abrogated, then, *a fortiori*, those of an agent of the state can also be abrogated, and this, in essence is what § 1983 does, so that, even if the College were an arm-of-the-state, it's agents could not claim immunity.

<u>COUNT 2</u>

1.  In a letter to Dr. Jackson, dated October 19, 2005, Dr. Carole M. Berotte Joseph, the new President of Massachusetts Bay Community College restated College policy on faculty presence in scheduled classes and laboratory sections, and stated, additionally, that failure to be in the laboratory during these scheduled hours constituted an unacceptable safety hazard. Both these policies were included in the charges against Dr. Jackson justifying his dismissal. Both were found to be without merit by the Arbitrator (AA, at 36-38). Dr. Joseph made no reference to the Arbitrator's opinion dismissing these charges in rescinding Dr. Jackson's dismissal, but rather based this on a decision of the College not to "expend further resources litigating this matter." Taken in this context the letter constitutes a barely veiled threat of future retaliation against Dr. Jackson on the same charges which had been used to justify the dismissal earlier. This threat can only be seen as an attempt to intimidate and to coerce Dr. Jackson, resulting from his exercise of his First Amendment right of free speech.

2.  Dr. Jackson clearly had the right to appeal his dismissal under the Constitutions and statutes of both the United States and the Commonwealth of Massachusetts. In a case brought under the Massachusetts Civil Rights Act, *Buster v. Moore*, 438 Mass. 635; 783 N.E.2d 399 (2003), the Court specifically noted this right as being secured by the Constitution or laws of the Commonwealth  (*Id.*, at 644, n. 14).

3. The Massachusetts Civil Rights Act, M.G.L. ch. 12 § 11I, while generally co-extensive

with the Federal statute, 42 U.S.C. § 1983, differs from the Federal statute in that it does not

require State action, but does require a showing of threats, intimidation or coercion, *Chilson*

*v. Polo Ralph Lauren*, 11 F. Supp. 2d 153 (U.S. Dist. Ma, 1998). For purposes of the Civil

Rights Act (*Id.*):

> "'threat' . . . involves the intentional exertion of pressure to make another fearful or
> apprehensive of injury or harm . . . 'Intimidation' involves putting in fear for the
> purpose of compelling or deterring conduct . . . ['Coercion' involves] 'the application
> to another of such force, either physical or moral, as to constrain [a person] to do
> against his will something he would not otherwise have done.'" Planned Parenthood
> League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994).

The Massachusetts Civil Rights Act includes an attempt to interfere with the civil rights of a

person as sufficient for a violation of the law. Here the language of President Joseph's letter

represents a clear attempt to interfere with Dr. Jackson's right of free speech, and his exercise

of his right to academic freedom under the Collective Bargaining Agreement.

4. Dr. Jackson believes that his rights can best be protected by an injunction restraining the

College from attempting to interfere with these rights, and by the Court retaining jurisdiction

in this matter.

CONCLUSIONS

Count 1:

1. Dr. Jackson's constitutional rights have been violated (a) by not being afforded substantive

due process in the absence of an impartial arbiter in a hearing resulting in his being deprived

of property and liberty interest; by not being afforded the equal protection of the laws; and by

asymmetric evidentiary rulings; and (b) by not being afforded procedural due process through the absence notice.

2. These violations were due to the actions of  Defendants, who are thus individually and in their official capacities liable to Dr. Jackson. Dr. Jackson should be made whole to the extent not covered by the Arbitrator's Award, and allowable under 42 U.S.C. § 1988.

<u>Count 2:</u>

1. In a letter to Dr. Jackson by the new President of Massachusetts Bay Community College it was clear that the College has rejected the Arbitrator's findings that there was no merit to the charges used to justify his dismissal, and has instead based the rescission of the dismissal on the basis of conservation of the College's resources. By reiterating the charges justifying the dismissal the College is clearly using threats, intimidation and coercion, thus violating his First Amendment right of free speech.

2. Dr. Jackson therefore asks the Court to enjoin the College from taking such actions as will constitute further interference with his right of free speech, and further requests the Court to maintain jurisdiction in this matter.


Dated: 13 January 2006


<u>/s/ Sam Silverman</u>

SAM SILVERMAN, BBO No. 462930
18 Ingleside Road
Lexington, Massachusetts 02420
(781) 861-0368
smpr@rcn.com
Attorney for Dr. Jackson,  Plaintiff