UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-11429 RWZ

BRUCE JACKSON

V.

LINDSAY NORMAN, Individually and in his former capacity as President of Massachusetts Bay Community College; PAULA GASTENVELD, Individually and in her former capacity as Vice-President of Massachusetts Bay Community College; GHAZI DARKAZALLI, Individually and in his capacity as Dean at Massachusetts Bay Community College; THOMAS SABBAGH, Individually and in his former capacity as Associate Dean at Massachusetts Bay Community College; LAURIE TAYLOR, Individually and in her capacity as Vice-President of Massachusetts Bay Community College

PLAINTIFF'S REPLY TO DEFENDANTS OPPOSITION TO MOTION FOR

DEFAULT AND MOTION TO ENLARGE TIME

1. In the following we shall examine the reasons given in Defendants' Opposition to Plaintiff's Motion for Default Judgment and Motion to Allow a Late Answer Nunc pro Tunc and Memorandum of Law (hereinafter "Defendants' Opposition") in the order therein given. Defendants believed that simply filing an "Answer" late without prior permission by the Court was sufficient to make a request for a default judgment moot. This does not constitute excusable neglect, and the Court should therefore allow Plaintiff's motion and deny Defendants' motion. Facts and arguments in support of this conclusion are provided in the text below, and a summary of the arguments is given at the end of this reply in the section entitled "Conclusions.".

A. EXCUSABLE NEGLECT

1. Defendants state: "Since, due to the absence of the pertinent entry in the office's case management system, undersigned counsel missed the deadline to file an answer and filed it upon discovering the error, there was no excusable neglect."

2. <u>Facts</u>. As noted in Plaintiff's Motion, an "Answer" was filed either some fourteen months, or some five months, after a default became effective, depending on whether Defendants' Motion to Dismiss is accepted as a motion to dismiss, or, in fact, as a motion for summary judgment.

3. The "Answer" filed by defendant's, however, has no force as regards satisfaction of F.R.Civ.Proc. Rule 12, since Court permission is required to file late, and there had not even been a motion to accomplish this.

4. Defendants' have now, in conjunction with the Opposition to Plaintiff's motion for a default judgment, filed a motion to allow a late answer.

5. The Court can allow such a late answer on a showing of excusable neglect.

6. Defendants argue, on 29 December 2006, that an error in the office's case management system is sufficient to constitute excusable neglect.

7. <u>Defendants, through their counsel, ignore the plain and unambiguous meaning of the Federal Rules.</u> Contrary to the argument of 29 December 2006, defendants' counsel had, on 11 December 2006 given a quite different explanation for opposing plaintiff's proposed motion for a default judgment. In an email of 11 December 2006, in response to a draft of a proposed motion for a default judgment by plaintiff, defendants' counsel stated:

> To the extent that your email below [the copy of the proposed motion] is a communication pursuant to the pertinent rule, I write to tell you that we are unable to narrow the issues.  Since the answer was filed, your motion raises a moot issue.  You cannot obtain default for failure to answer where the answer was

> already filed.  If you nonetheless file the motion, you will again waste everybody's time with a meritless claim.

That counsel believed that it was sufficient to simply file an answer to moot any default is supported by the fact that filing of the "Answer" was unaccompanied by a motion to allow a late filing, as required by F.R.Civ.Proc. Rule 6. These facts provide indisputable evidence that counsel was either ignorant of or unaware of the clear and unambiguous language of the Rules.

8. Defendants cannot argue that the fault lies with their counsel, and not with themselves. They must accept the consequences of their counsel's actions or inactions. "[C]lients must be held accountable for the acts and omissions of their attorneys." *Pioneer Investment Services v. Brunswick Associates*, 507 U.S. 380**;** 113 S. Ct. 1489; 123 L. Ed. 2d 74 (1993), at 396.

9. <u>Discussion.</u>  Defendants rely [at 7] on *Pratt v. Philbrook*, 109 F.3d 18 (1st Cir. 1997) for the proposition that "[f]actors to consider in the equitable determination of all relevant circumstances surrounding the party's omission include 'the danger of prejudice to an [adverse party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" [citing *Pioneer, supra*]. The citation from *Pratt* is accurate, but, importantly, it ignores completely the modifications of later case law, both from the First Circuit, in agreement with most, if not all, other Circuits.  These cases show conclusively that the *Pioneer* factors are not of equal weight. In fact a delay resulting from ignorance of the Rules is sufficient to outweigh all the other factors combined. See, for example, *Graphic Communications Int'l Union v. Quebecor Printing*, 270 F.3d 1 (1st Cir. 2001), at 5:

>Although the Pioneer standard is more forgiving than the standard in our prior case law, there still must be a satisfactory explanation for the late filing. We have observed that "'the four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry. . . .'" Hosp. Del Maestro, 263 F.3d at 175 (quoting Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000)). This focus comports with the Pioneer Court's recognition that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." 507 U.S. at 392.

Furthermore:

>Even in the wake of Pioneer, therefore, when a party's or counsel's misunderstanding of clear law or misreading of an unambiguous judicial decree is the reason for the delay in filing the notice of appeal, we have continued to uphold findings of "no excusable neglect" where the court cited the absence of unique or extraordinary circumstances. *Id.*

Defendants, in the instant case, have not cited any unique or extraordinary circumstances.

In this connection we may also cite another First Circuit case, *David v. Hall*, 318 F.3d 343, 346 (1st Cir. 2003): "Mistake by counsel in reading the statute or computing time is not even excusable neglect."

As noted earlier, other Circuits agree. A Second Circuit case, *Silivanch et al. v. Celebrity Cruises*, 333 F.3d 355, 366 (2d Cir. 2003), summarizes the situation as follows:

>In the typical case, the first two *Pioneer* factors will favor the moving party: "Delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, … And rarely in the decided cases is the absence of good faith at issue. See id. But despite the flexibility of "excusable neglect" and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant." *Pioneer*, 507 U.S. at 395. We have noted that the equities will rarely if ever favor a party who "fails to follow the clear dictates of a court rule" and held that where "the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." Canfield, 127 F.3d [248] at 250-51.

See also cases cited in *In re Enron*, 419 F.3d 115 (2nd Cir. 2005). See also *McMillian v.*

*District of Columbia*, **233 F.R.D. 179** (D.D.C. 2005)(failure to obtain leave of court to late file was "inexcusable).

Even if the late filing were due to an error in the office's case management system, this would not be sufficient. Counsel is expected to stay familiar with their case and its status. Case law does not consider inadvertence of this sort to be excusable neglect. See, e.g., *Graphic Communications, supra*. "If carelessness were an escape hatch from statutes of limitations, they would hardly ever bar claims." *David v. Hall*, 318 F.3d 343, 346 (1st Cir. 2003).

Finally, we note that defendants emphasis on their due diligence does not aid their cause, but rather militates against them: "Given the care with which Radio City's counsel had followed other developments in this case, … his inadvertence with respect to the time limit is rendered even less excusable." *Mattel, Inc. v. Radio City Entertainment*, 210 F.R.D. 504 (S.D. NY 2002)

10. Conclusion. Defendants cannot escape the consequences of their failure to follow the clear and unambiguous wording of the Federal Rules. There is no excusable neglect here allowing for a late motion, and defendants remain in default.

11. Defendants' attempt to shift the burden to plaintiff must fail. Defendants attempt to shift the burden to plaintiff by introducing a new legal principle without any supporting legal precedent: that it is plaintiff's actions, rather than defendants, which should make up for and override defendants fatal errors. This principle is indefensible. Plaintiff nevertheless presents brief comments on defendants' accusations, since these consist of misrepresentations verging on untruths. We will discuss some, though not all of these accusations, the comments being applicable to all. Defendant argues that plaintiff did not

file a motion for default until after defendants' "Answer" had been filed. Defendant points to no case where there is such a requirement, and cannot do so, because there is no such requirement. Defendant states that plaintiff did not comply with the requirement of conferring with opposing counsel in preparing a joint pre-trial memorandum. This is a simple untruth. Throughout the course of this litigation plaintiff has asked defendants for a proposal or discussion of a possible settlement, and has discussed other questions as they have arisen. As to the pre-trial memorandum, on December 7, 2006, Attorney Walsh left a voice mail for plaintiff's attorney which he did not hear until December 8, after an exchange of emails. On December 8, at 8:46 a.m. she sent an email stating that since she had not heard from plaintiff's attorney she was filing a pre-trial memorandum. On that same day, immediately after reading his email messages, plaintiff's attorney sent an email, at 11:17 a.m., to Attorney Walsh, stating: "However, if you want to send me a draft of your proposed memorandum I will be glad to look at it and see if there is anything there that we can agree on." Attorney Walsh's response to this offer was to file her pre-trial memorandum. To interpret this sequence as being a refusal of plaintiff's attorney to confer is such a twisting of the facts as to suggest a lack of good faith on the part of defendants' attorneys.

Defendants' attorney then charges plaintiff's attorney with filing spurious motions, citing the motion to disqualify defendants' attorneys. This motion was denied without opinion. Plaintiff's attorney continues to believe that any party is entitled to a trial free of illegality, including a violation of statute, such as that defining the Attorney General's functions. Plaintiff's attorney provided statutory and case law evidence in support of this position. Defendants, on the other hand, produced no evidence whatsoever that they had

6

complied with the requirements of the statute, nor do they, in the present motion, provide any basis for their understanding of the pertinent statute. Their comment is disingenuous and misleading. Throughout this litigation they have often provided simple conclusory statements, as here. I disagree that this is a way to argue in court.

Defendants' attorney argues that plaintiff did not follow discovery deadlines and was evasive in answering. The truth is quite opposite, as shown, for example, by the following facts. Defendants discovery requests were made on October 20, and plaintiff responded to them on November 20, in order to provide defendants time for additional discovery before the November 30 deadline. Plaintiff's requests were made on October 26, and responded to on December 8, after the discovery deadline had passed. In response to defendant's requests for documents, plaintiff provided complete medical records, copies of all affidavits in its possession, and copies of media reports of plaintiff's activities. By contrast, not a single document was received from defendants in response to plaintiff's requests. It should be obvious as to which party was more responsive.

Finally, defendants' attorney notes that plaintiff's attorney's client, Jackson, has filed complaints with the BBO against three attorneys, none of whom are parties to the present case. That Jackson has done this is completely irrelevant to the present case, and simply another example of defendants' attorney attempting to throw dust in the eyes by the use of extraneous material to obscure her failure to follow the Rules. In connection with the BBO complaints, I wish to note that I clearly and strongly told my client that I would not advise him one way or the other on that matter, that I have not seen his complaints, and have no knowledge of their nature. I object very strongly to defendants' attorney bringing in this totally irrelevant matter in this case, and feel that it is close to being unethical.

## B. ACTIVE AND MERITORIOUS DEFENSE

1. Plaintiff does not dispute that defendants have appeared and defended their case. This, however, is irrelevant, the primary issue here being the consequences of defendants' attorneys failure to obey the Rules, with no mitigating circumstances of excusable neglect. We note parenthetically, that in many, perhaps most, of the cases cited above relating to late filings the attorneys actively defended their clients, and this was not a factor in the decisions in those cases.

2 <u>Meritorious defenses.</u> The question of whether or not defendants have meritorious defenses is, as noted in Part A above, basically irrelevant as to whether defendants failure to timely file an answer is excusable or not. Nevertheless, we here make some comments on this question.

3. Even a cursory reading of the arbitrator's award and opinion demonstrates the weakness of defendants case. The facts given by the Arbitrator, both explicit or implicit, clearly show that defendants colluded to set up procedures and an investigation which violated plaintiff's due process rights. Defendants position (Defendants Opposition, at 6-7) argues that following, in part, formal procedures and, possibly, procedural due process rights, is sufficient. They are mistaken. We outline only a few of the pertinent issues here, but refrain from a complete analysis since we do not consider these matters to be within the confines of the present motions.

4. Substantive due process rights must be accorded, and only then do procedural due process rights come into play. Defendants somehow miss these vital distinctions.

5. Due process includes the requirement that an impartial decision maker must be involved at every stage of the process. The Arbitrator found that Norman, presiding

officer and decisionmaker at the hearing to determine whether Jackson should be dismissed, had made up his mind about Dr. Jackson's guilt at least two months before conducting the hearing and issuing his decision. Arbitrator's Award and Opinion (hereinafter AA), at 42 When he evaded this conclusion the Arbitrator commented that: "This explanation is not credible." *Id.*

6. With regard to the investigation carried out by defendants on Jackson's conduct, the Arbitrator noted: "More importantly, the focus of the investigation seemed to be one of building a case for dismissal, rather than of ascertaining whether there was a problem and, if so, developing a plan to remedy it." Clearly there was no impartiality, and, just as clearly, defendants acted together in this matter.

7. The procedures used to deal with the student's complaint ran counter to the approved Student Grievance Procedure, and were developed essentially ad hoc to be used against Dr. Jackson and his colleague, Dr. Pansé. They were unique. For no other tenured professor were these procedures used, even for those against whom charges were brought during the course of the proceedings against Jackson. This represents a clear violation of Jackson's constitutional right to equal protection.

8. In the course of the hearing presided over by Norman objections were raised by attorneys for both sides. As to objections made by College counsel, Norman allowed basically all but one. As to objections made by Jackson's attorney essentially all but one were denied. This is a clear demonstration of lack of impartiality, and may also, in its own right, represent a due process violation.

9. Finally, there is even cause to argue that Jackson did not even receive procedural due process. Where a sanction such as dismissal, with its consequent loss of income and

potential stigma to reputation exists, case law shows that procedural due process requires notice that the charged for actions would lead to dismissal. The Arbitrator noted that "it cannot be said that the College had put Dr. Jackson on notice that his teaching methods, including his use of mentors, was inappropriate and, if continued, could result in discipline, including dismissal." *AA*, at 40. Thus his procedural due process rights were also violated.

10. It is unnecessary to go any further. The defendants "meritorious defenses" are non-existent.

## CONCLUSIONS

1. It is indisputable that defendants failed to file an answer as required by F.R.Civ.Proc. Rule 12(a)(1)(B), the delay, as of today, being of the order of (a) 15 months if their motion to dismiss is treated as a *de facto* motion for summary judgment, or (b) 6 months if measured from the date of denial of the motion to dismiss.

2. Defendants' counsel, in an email reply on 11 December 2006 to a proposed draft of a motion for default judgment, stated that it was only necessary to file an answer, following which any opposition by opposing counsel would be moot. Such a reason, ignoring the requirement of permission of the Court for a late filing, is not consistent with F.R.Civ.Proc. Rule 6, and represents a second violation of federal rules.

3. In a motion filed on 29 December 2006 defendants' counsel now says the late filing was due to an error in the office's case management system. This "explanation" is inconsistent with the previously provided explanation of mootness, and suggests a lack of good faith on the part of counsel. In any event, case law shows that such inadvertence does not constitute excusable neglect.

4. Defendants' counsel, citing *Pratt v. Philbrook, supra*, lists four factors as a basis for excusable neglect in a late filing: danger of prejudice to the opposing party; length of delay, reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Counsel argues no prejudice to the opposing party, and implies bad faith on the part of plaintiff's counsel (not listed in case law as a factor justifying late submission). Plaintiff's counsel objects strongly to this latter characterization.

5. *Pratt v. Philbrook* is replaced in subsequent case law by a modification, accepted by most, if not all, Circuits which have ruled on this matter, which notes that three of the four factors are movant-friendly, that they all do not have equal weight, and that the most important, and most decisive, factor is that of the reason for the delay. Case law shows clearly that ignorance or misunderstanding of the Rules, as in the present situation, cannot be a sufficient reason to satisfy the excusable neglect standard.

6. Thus the inescapable conclusion is that defendants motion for extension of time must be denied, and plaintiff's motion for a default judgment should be allowed, with a later hearing set on damages.

7. Defendants' counsel includes much extraneous material casting aspersions and accusations on the character and behavior of plaintiff's counsel, presumably in the hope of portraying plaintiff's counsel as the malefactor, thus diverting attention from the actions of defendants' counsel. Plaintiff's counsel felt that these negative characterizations should not go unchallenged, and has therefore taken space to comment on them, though he feels that they are basically irrelevant to the question at hand.

8. We note parenthetically that this is the second motion (in addition to the original motion to dismiss) of defendants which is *de facto* also a motion for summary judgment, by virtue of the nature of the extraneous material included.

Dated: 2 January 2007

/s/ *Sam Silverman*_____

SAM SILVERMAN, BBO No. 462930
18 Ingleside Road
Lexington, Massachusetts 02420
(781) 861-0368
Smpr111@verizon.net
Attorney for Dr. Jackson, Plaintiff