COMMONWEALTH OF MASSACHUSETTS
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BRUCE JACKSON ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| LINDSAY NORMAN, ) | C. A. NO. 05-11429-RWZ |
| PAULA GASTEN VELD, ) | |
| GHAZI DARKAZALLI, ) | |
| THOMAS SABBAGH, ) | |
| LAURIE TAYLOR, ) | |
| ) | |
|     Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

Plaintiff Bruce Jackson ("Jackson") has brought this 42 U.S.C. §1983 action against various officials of the Massachusetts Bay Community College ("the College") for violation of due process rights. The allegations stem from a termination process set forth in the Collective Bargaining Agreement ("CBA") between the Union and the Board of Higher Education which governs the terms of Jackson's employment. Jackson was dismissed from his employment in August, 2002 and now seeks damages. Although the CBA requires that the College President, Lindsay Norman("Norman") shall conduct the hearing, Jackson claimed that Norman was not an impartial judge and therefore Norman serving as hearing officer and decision maker deprived him of due process. Upon motion by the defendants, this Court found that the defendants cannot

1

be sued in their official capacities, but that the plaintiff could go forward and "need only allege [im]partiality[sic] [by arguing about the circumstances surrounding the dismissal] to survive a motion to dismiss". The due process claim is before this court.

Jackson alleges that the defendants denied him his procedural and substantive due process rights under both the United States and Massachusetts constitutions. The defendants are entitled to summary judgment as a matter of law because Jackson received all procedural process that was due and was not subject to any violation of substantive due process.

**II.    Undisputed Facts**

For the purpose of this summary judgment motion, the defendants submit that the following numbered material facts are not in dispute:

1. In 1993, the College hired Jackson as a full time associate professor of microbiology and 2000 he was granted tenure.[1]

2. In March, 2002 the College received complaints from several students in Jackson's classes.[2] An investigation ensued.[3]

3. At the conclusion of the investigation, defendant Paula Gastenveld, the College's Vice President of Academic Affairs, recommended to Lindsay Norman, the College's President, that Jackson be dismissed from employment.[4]

4. Section 15.02 (2) of the CBA provides that "The President of the College shall notify the unit member that the unit member shall be recommended for dismissal…."[5]

---

[1] September 12, 2005 Award of Arbitrator, a copy of which is annexed as Exhibit A. p.12
[2] March 15, 2002 Memorandum from Darkazalli to Jackson, a copy of which is annexed as Exhibit B.
[3] May 16, 2002 Memorandum from Darkazalli to Jackson, a copy of which is annexed as exhibit C.
[4] May 23, 2002 letter from Darkazalli and Gastenveld to Norman, a copy of which is annexed Exhibit D.
[5] June 14, 2000 Agreement between the Board of Higher Education and the Massachusetts Community Council, a

5. Pursuant to the CBA, Section 15.02, Norman notified Jackson of the recommendation for dismissal and provided him with a copy of the report and recommendation of Dean Darkazalli and Vice President Gastenveld.[6].

6.  On June 28, 2002 Norman provided Jackson with a formal statement of charges per the CBA, Section 15.02(3) citing Jackson's failure to teach, supervise, be present during class time and rescheduling class time, without authorization and contrary to the course descriptions. [7]

7.  Jackson was afforded a formal hearing, as provided by the CBA, Section 15.02(4). That section provides that the President of the College shall conduct the hearing, a unit member shall be represented by counsel at the hearing, be afforded an opportunity to obtain evidence, have the right to confront and cross examine witnesses. The hearing commenced on August 5, 2002 and lasted three days.[8]

8.  On August 8, 2002, Norman notified Jackson that he found the charges to have been substantiated and dismissed Jackson.[9]

9.  As provided by the CBA, Section 15.02(8) Jackson appealed his dismissal to Judith I. Gill, the Chancellor of Higher Education. On September 16, 2002 the Chancellor's designee upheld Jackson's dismissal [10]

10.  The Massachusetts Community College Council/ Massachusetts Teachers Association ("the Union") thereafter sought arbitration on Jackson's behalf, per the CBA.[11]

---

copy of which is annexed as Exhibit E.
[6] May 28, 2002 letter from Norman to Jackson, copy of which is annexed as Exhibit F.

[7] June 28, 2002 letter from Norman to Jackson, a copy of which is annexed as Exhibit G.
[8] A copy of the transcript of the hearing of August 5, 6, 7 2002 is annexed as Exhibit H.
[9] August 8, 2002 letter from Norman to Jackson, a copy of which is annexed as Exhibit I.
[10] September 16, 2002 letter from Tsaffaras to Silverman, a copy which is annexed as Exhibit J.

11. Twenty-three days of arbitration hearings were held between March 12, 2003 and October 26, 2004. The Arbitrator issued an Opinion and Award on September 12, 2005. She found Jackson's dismissal was without just cause and was arbitrary and unreasonable, but not capricious.[12] The Arbitrator remanded the matter for reassessment to the College.

12. By this time Norman had been succeeded by Dr. Carole Joseph who reinstated Jackson to his position,[13] paid him back pay and benefits.[14]

### III. Argument

**A. The Applicable Summary Judgment Standard.**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A "material fact" is "a contested fact [that] has the potential to change the outcome of the suit...." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). "Genuine" is defined as when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Id.

**B. Jackson Was Not Deprived Of Procedural Due Process.**

Jackson claims that his dismissal and its consequences violated his right to procedural due process under the Fifth and Fourteenth Amendment, as well as the under the Massachusetts Constitution.

At the outset, it should be noted that the Federal and Massachusetts standards for a

---

[11] September 18, 2002 Demand for Arbitration by Union, annexed as Exhibit K.
[12] Exhibit A p.41.
[13] October 19, 2005 letter to Jackson from Joseph, annexed as Exhibit L.
[14] December, 2005 and 2006 letters documenting back pay and reimbursed medical expenses, annexed as Exhibit M.

procedural due process analysis are identical.  Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof. Ins. Assn., 418 Mass. 436, 443 (1994)

To avoid summary judgment on a procedural due process claim, a plaintiff must show (1) that he had a property interest defined by state law; and (2) that defendants, acting under the color of state law, deprived him of that interest without adequate process.  See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir.1994).  While Jackson undoubtedly had a cognizable property interest in his tenured position at the College, Cotnoir v. University of Maine Systems, 35 F. 3d 6, 10-11 (1994), and the defendants acted under color of state law, Jackson cannot show that he was deprived of due process.

In the context of a dismissal from a tenured position, procedural due process guarantees some form of hearing, with notice and an opportunity to be heard.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985); Collins v. Marina-Martínez, 894 F.2d 474, 480 (1st Cir.1990); Newman v. Com. of Mass., 884 F.2d 19, 23 (1st Cir. 1989).  While a hearing need not be elaborate, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546; Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985). Jackson was provided this procedural due process and much more.  Norman gave him a formal statement of the charges against him.  Two months later, he was afforded a three-day hearing, as provided by the CBA. At the hearing he was represented by counsel and had ample opportunity to call witnesses, present testimony, confront and cross-examine adverse witnesses, and argue

5

against the recommended dismissal.[15] He was thereafter served with a written decision and the facts on which it was based.  He exercised his right of appeal and when that was unsuccessful he was able to proceed to arbitration, where the dismissal was ultimately voided and his back pay, benefits and seniority restored.

Despite the multiple pre and post deprivation opportunities to be heard, Jackson , nonetheless, maintains that it was a denial of due process for Norman to act as the decision-maker regarding the charges against him.

> Plaintiff believes that in the specific circumstances of this case, the second step in the process, the hearing chaired by the President, who also acted as judge and decision maker, resulted in a record so grossly prejudiced against plaintiff as to constitute a violation of his due process rights..Plaintiff also alleges that the other defendants deliberately colluded and cooperated with the President in setting up and carrying out acts which were meant to justify the dismissal. Plaintiff argues that sufficient evidence was developed in the course of several hearings, conducted under oath to demonstrate conclusively that his constitutional rights, both Federal and State , to an impartial adjudication were violated.   Complaint ¶ 17.

Such allegations are nothing more than "'conclusory allegations, improbable inferences, and unsupported speculation'" which, standing alone, cannot withstand summary judgment. Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000); Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997). As this Court has stated in its Order of June 19, 2006 there is a " high threshold for improper partiality established by the case law." There is nothing in the record to support these allegations. Plaintiff was specifically asked in discovery the basis for the above allegations and furnished no responsive answer, referring

---

[15] The transcript of this hearing was approximately 900 pages. Jackson's direct examination is contained in 156 pages. pp.7-163 He called no witnesses and introduced 13 exhibits. The College called 5 witnesses and introduced 29 exhibits. *See* Exhibit H.

vaguely to the voluminous record in this case.[16] Yet the record is clear that the recommendation for Jackson's dismissal was in a letter dated May 23, 2002 addressed to President Norman and signed by Dean Ghazi Darkazalli and Vice President Gastenveld.[17] Up until this point President Norman was not involved in the investigation. [18]

The Arbitrator noted in Norman's testimony that "[I]n all instances of complaints against faculty [Norman's standard response] is to make sure that there is due process and that these complaints are taken seriously. Asked how he insured due process President Norman replied" By making sure the vice president for academic affairs was apprised of these matters and that it was being handled" [19]

Thus, President Norman did not initiate the investigation of Jackson, and even if he did a decision-maker is not disqualified by the mere fact that he was the person who initiated the investigation. O'Brien v. DiGrazia, 544 F.2nd 543, 547 ( 1st Cir. 1976)

Plaintiff claims that there is a violation of due process because the President who chaired the hearings was not an impartial decision maker. Complaint at ¶ 17. To prove partiality a plaintiff must overcome the presumption that administrators are "men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances, and must demonstrate an actual risk of bias or prejudgment", Braslett v. Cota, F 2d (1st Cir. 1985) As the record shows ( see discussion in pages 9 and 10 on substantive due process) the administration and President Norman followed the CBA in implementing a fair termination process that met due process standards.

And, even if plaintiff could prove that Norman was not an impartial decision maker, an employee facing discharge is not entitled to a wholly impartial decision maker. *See* e.g. Acosta-

---

[16] " Plaintiff's Response to Interrogatories of Defendant", November 20, 2006( which are not executed by the plaintiff, but by his lawyer) , annexed as Exhibit N. Interrogatories 5,6,7,9.
[17] Exhibit D.
[18] Exhibit B, C, D.
[19] Exhibit A. p.23

<u>Sepulveda v.</u> <u>Hernandez- Purcell</u>, 889 F.2nd 9, 12 (1st Cir. 1989). The terms of Jackson's employment was covered by the CBA which expressly provides that "[t]he president of the College shall conduct the hearing…" Section 15.02(5). Further, the Rule of Necessity provides that judges may hear a case in which they have an interest, where there is no provision for appointment of another judge. This doctrine also applies to other decision makers. <u>U.S. v. Mill</u>, 449 U.S. 200, 223 (l980). Thus, there was no alternative for anyone other then President Norman to conduct the hearing.

Finally, it was not Norman who was the ultimate decision-maker as to Jackson's dismissal. Rather, it was Gill, the Chancellor of Higher Education, to whom Jackson had duly appealed.

Even if Jackson could show that he was denied procedural due process, he would not have a federal cause of action. The law is well-established that:

> if a state provides adequate post deprivation remedies--either by statute or through the common-law tort remedies available in its courts--no claim of a violation of procedural due process can be brought under Section(s) 1983 against the state officials whose random and unauthorized conduct caused the deprivation.

<u>Lowe v. Scott</u>, 959 F.2d 323, 340-41 (1st Cir. 1992).

Here, Jackson was provided adequate post-deprivation remedies in the form of CBA right to arbitration. This arbitration hearing lasted twenty-three days.[20] Indeed, these post-deprivation state remedies resulted in Jackson's reinstatement and the restoration of his back pay and benefits.

---

[20] The arbitration comprised 23 days of hearings with 69 exhibits. Exhibit A. Introduction p.1

Jackson was not denied procedural due process because his post-deprivation relief did not include the damages and attorney's fees which he now seeks. Post-deprivation remedies need not be identical or as complete as might otherwise be obtained in federal court in order to satisfy procedural due process. The Supreme Court has explicitly held that:

> [a]lthough the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.

Parratt v. Taylor, 451 U.S. 527, 544 (1980). Thus, a plaintiff errs by claiming that state remedies were insufficient "solely because relief might be delayed and damages unavailable." Licari v. Ferruzzi, 22 F.3d 344, 348 (1st Cir. 1994). "A damage remedy is not an essential component of constitutionally adequate review procedures." Chongris v. Board of Appeals, 811 F.2d 36, 44-45 (1st Cir.), cert. denied, 483 U.S. 1021 (1987).

### C. Jackson Was Not Deprived Of Substantive Due Process.

Jackson alleges the violation of substantive as well as procedural due process. Even taking the facts in the light most favorable to the plaintiff, as we must, Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), Jackson does not make out a substantive due process violation.

When examining a substantive due process claim at summary judgment the Court of Appeals has stated:

> it is only when some basic and fundamental principle has been transgressed that "the constitutional line has been crossed." As distinguished from its procedural cousin...a substantive due process inquiry focuses on "what" the government has done, as opposed to "how and when" the government did it. And although the yardstick against which substantive due process violations are measured has been characterized in various ways, we are satisfied that, before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking.

Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990), cert. denied, 498 U.S. 1041

(1991)(citations omitted).

The action of the defendants did not transgress any basic or fundamental principle, nor can it be fairly characterized as egregiously unacceptable, outrageous, or conscience-shocking. It is true that the Arbitrator found that, "The College did not have just cause to dismiss [Jackson] but that the decision to dismiss Jackson was "arbitrary or unreasonable   not capricious or made on a whim." [21] The Arbitrator acknowledged that Jackson " [a]lthough recruited by the College, has had  an uneasy contentious and indeed, litigious relationship with several of its administrators and even a few faculty members… Dean Darkazalli was in a contentious relationship with Dr. Jackson…Jackson's relationship with President Norman has been equally contentious…" [22]

The Arbitrator found that the recommendation to terminate Jackson was made by Vice President Gastenveld and Dean Darkazalli on May 23, 2002 in a letter addressed to President Norman for "failure to fulfill the duties of the position in which he is employed.".[23] This recommendation was not made until after student complaints were made about Dr. Jackson , an investigation ensued and the administration met with Jackson several times. After receiving student complaints the administration scheduled a meeting with Dr. Jackson on March 28, 2002, where Dr. Jackson  was represented by a colleague of his, Professor Chandrakant Panse. [24] At this meeting Jackson was informed that the administration would be talking to other students "to be fair"[25]  These students were given questionnaires consisting of six questions about Dr. Jackson's teaching methods.[26] "There was considerable testimony in the record regarding the content of these interviews.' [27] Another meeting with the administration and Jackson was held

---

[21]  Exhibit A. p.41
[22] Id.
[23] Exhibit D.
[24] Exhibit A. p.18
[25] Id. p.18
[26] Id. p.19
[27] Exhibit A. p.19.

on April 26, 2002 regarding the student complaints. [28]On May 16, 2002 Jackson was sent a packet of materials relating to this investigation of the student complaints which included a chronology of the complaint, a transcript of the student's interviews and other memoranda. [29]Additional correspondence was sent to Jackson including the June 28, 2002 notice of termination, pursuant to Section 15.02(3) of the CBA. It was this entire process that the Arbitrator relied on to find that the decision to terminate Jackson was not capricious or "not made on a whim".

The Arbitrator's use of the term "arbitrary and unreasonable " does not, in and of itself, support a finding of a substantive due process violation. Though the phrase "arbitrary and capricious" may indicate an absolute lack of rationality, its legal usages are decidedly otherwise. Amsden v. Moran, 904 F.2d. 748,754 n.5 (1st Cir.1990) As noted by the Court of Appeals, "[i]n the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error. Further precision eludes us." Amsden, 904 F.2d at 754, n. 5.

Here, the Arbitrator found that even if some of the College's charges against Jackson were true, the dismissal was not for just cause since Jackson was not put on notice that his teaching methods were inappropriate or given progressive discipline.[30]
This purported failure to provide Jackson with some warning on his controversial teaching methods, prior to the notice of the student complaints in March of 2002 was not "conscience shocking." Id. at 754

### D. Defendants Are Entitled To Qualified Immunity.

---

[28] Exhibit A. p.22
[29] Exhibit C.
[30] Exhibit F. p.40

Even if the defendants were determined to have violated Jackson's right to due process the defendants are not financially liable on grounds of qualified immunity. Qualified immunity shields government actors from damages based on their conduct "unless a reasonable official would have known, in light of clearly established law, that he was acting unconstitutionally." Jordan v. Carter, 428 F.3d 67,71 (1st Cir. 2005) (citations omitted).

A three -part inquiry determines whether qualified immunity applies. Mihos v. Swift, 358 F.3d ,91,102 (1st Cir. 2004). A court must first consider whether the plaintiff's allegations, if true, establish a constitutional violation. Id. Second, the court must determine whether the right allegedly violated was "clearly established" at the time of the challenged conduct. Id. Third and finally, if the first two questions are answered in the affirmative, the court must determine "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Id. If the final answer is "no," the defendant or defendants are entitled to qualified immunity notwithstanding any constitutional injury to the plaintiff. Jordan, 428 F.3d at 72.

Jackson fails to meet the first part of this test because he has not established a constitutional violation for the reasons set forth above, pp.4-10. However, even if Jackson's rights to due process had been violated, as required by part one, the relevant law in has not been "clearly established," as required by part two.

The question of whether a right has been "clearly established" must be undertaken "'in light of the specific context of the case, not as a broad general proposition.'" Suboh v. District Attorney's Office of Suffolk District ., 298 F.3d 81, 93 (lst Cir.2002) quoting Saucier v. Katz, 533 U.S. 194, 201 (2001). It has not been clearly established that dismissal for inappropriate

teaching methods, pursuant to CBA procedure, purportedly without graduated discipline, would violate due process. In the absence of existing case law, defendants have no fair warning that their conduct is in violation of plaintiff's constitutional rights. Suboh , 298 F3rd at 93.

Finally, even if Jackson were able to meet the first two parts of the test for qualified immunity, the defendants would still be entitled to qualified immunity because part three requires that a "similarly situated reasonable official" would have understood that the challenged action violated the constitutional rights at issue. The defendants acted in what they believed were the best interest of their students. They followed the CBA in moving to dismiss Jackson. Even if these actions were less than ideal the defendants would still be entitled to qualified immunity, which has been applied broadly that "'all but the plainly incompetent or those who knowingly violate the law' are protected from civil rights suits for money damages." Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995) quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991). There is no evidence of plain incompetence on the part of the defendants nor that they knowingly violated the law, hence the defendants are entitled to qualified immunity.

### IV. Conclusion

The defendants are entitled to summary judgment as a matter of law because Jackson received all procedural process that was his due and he was not subjected to any violation of substantive due process. Moreover, even if Jackson had suffered constitutional error, the defendants would be protected by qualified immunity because such error was neither clearly established nor would it have been apparent to reasonable officials in the specific circumstances of this case.

>Respectfully submitted,
>
>DEFENDANTS
>
>LINDSAY NORMAN, PAULA GASTENVELD, LAURIE TAYLOR, GHAZI DARKAZALLI, THOMAS SABBAGH, in their individual capacities,
>
>By their Attorney,
>
>MARTHA COAKLEY
>ATTORNEY GENERAL
>
>
>/s/Teresa Walsh_____
>Teresa Walsh
>BBO # 550047
>Assistant Attorney General
>One Ashburton Place
>Boston, Massachusetts 02l08
>6l7-727-2200 ext.2578

Dated:  February 8, 2007