UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BRUCE JACKSON** | ) |
|     **Plaintiff,** | ) |
| vs. | ) |
| **LINDSAY NORMAN,** | ) C. A. **NO. 05-11429-RWZ** |
| **PAULA GASTENVELD,** | ) |
| **GHAZI DARKAZALLI,** | ) |
| **THOMAS SABBAGH,** | ) |
| **LAURIE TAYLOR,** | ) |
| in their individual capacities | ) |
|     **Defendants.** | ) |

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S

## AFFIDAVITS

    The defendants move to strike the hearsay incorporated in the affidavits of Glenda M. Batzer, Donald F. Karp and Sarmad Saman.[1] Rule 56(e) of the Federal Rule of Civil Procedure provides that affidavits opposing summary judgment motions "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Where affidavits do not meet this standard, they are subject to a motion to strike. E.g., Quiles v. Sikorsky Aircraft, 84 F. Supp. 2d 154, 161 (D. Mass. 1999). The following portions of plaintiff's affidavits do not meet the standard because they contain

---

[1] Copies of the affidavits are attached as Exhibit A.

inadmissible hearsay that "set[s] out statements of others to assert the truth of those statements"[2]:

1. **Batzer affidavit:**

    "I returned [Paula Gastenveld's] call and she said that she knew that I was enrolled in the Biotech Program and that I had been in the program for several semesters. She informed me that she was aware that I am enrolled in Molecular Biology with Dr. Jackson. I said that is correct, I am currently taking Molecular Biology with Dr. Jackson. She informed me that she was contacting students that had taken classes with Bruce Jackson and that Mass Bay was building a case against him."'

2. **Karp affidavit**

    "At the start of my employment [as Laboratory Manager in the Division of Science and Engineering at MBCC], the Dean of the Department, Dr. Ghazi Darkazalli, toured me around the Department laboratories, including the Biotechnology labs, at which point he specifically mentioned to me that part of my duties would involve determining why so much money was spent on regular maintenance fees: if the work was in fact done, and if it was necessary. I cannot remember the exact words, but the
    implication was that I was to be checking up on the expenditures for
    which Dr. Jackson and his department were making."

3. **Saman affidavit**

    "...I was informed by the then Associate Dean Tom Sabbagh that both Dr. Jackson & Panse were fired & this decision was taken by the then President Norman during a Retreat in 2002...I was also told that in the same meeting that Norman told Ghazi Darkazalli and Tom Sabbagh that both Bruce Jackson and Chandra Panse must be fired."

For the reasons stated above, the defendants request that these affidavits be stricken.

---

[2] *See Riles,* 84 F. Supp. 2d at 161.

        LINDSAY NORMAN, PAULA GASTENVELD,
LAURIE TAYLOR, GHAZI DARKAZALLI,
THOMAS SABBAGH, in their individual
capacities,

By their Attorney,

MARTHA COAKLEY

ATTORNEY GENERAL

/s/Teresa Walsh
Teresa Walsh
BBO # 550047
Assistant Attorney General
One Ashburton Place Boston,
Massachusetts 02108 617-727-
2200 ext.2578

March 14, 2007

### CERTIFICATE OF SERVICE

    I, Teresa Walsh, Assistant Attorney General, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the notice of electronic filing (NEF) and paper copies will be sent to those indicated as non-registered participants by first class mail, postage prepaid.

/s/ Teresa Walsh
Teresa Walsh
Assistant Attorney General
Trial Division

Dated: March 14, 2007

# EXHIBIT A

Case 1:05-cv-11429-RWZ   Document 57   Filed 03/14/2007   Page 4 of 7

# AFFIDAVIT

I was a part time student in the Biotechnology Program at Massachusetts Bay Community College from 2000-2002.
In Spring 2002 , I was enrolled in Molecular Biology that was taught by Dr. Bruce Jackson and I was also enrolled in Chemistry II taught by Dr. Peter Nassif.
I came home from class to find a message on my answering machine from Paula Gastenfeld asking that I contact her regarding the Biotech program at Mass Bay.
I returned her call and she said that she knew that I was enrolled in the Biotech Program and that I had been in the program for several semesters. She informed me that she was aware that I am enrolled in Molecular Biology with Dr. Jackson. I said that is correct, I am currently taking Molecular Biology with Dr. Jackson. She informed me that she was " contacting students that had taken classes with Bruce Jackson and that Mass Bay was building a case against him".
After our conversation, I told her it was funny she called, because I was contemplating . filing a complaint regarding the Chemistry teacher, Dr. Peter Nassif. Even though academically I was doing okay in Dr. Nassif's class, he was verbally abusive to my mostly all female class and always called us "a bunch of losers". He worded the questions on exams like the following "My dumb brunette assistant". I said that he was unprofessional and it should not be allowed to teach this course. Paula Gastenfeld told me that the school had no control over how material was presented, but I could send her a copy of my exam to look at.
How is it one professor (Dr. Jackson) is criticized for absolutely doing nothing wrong and yet another professor (Dr. Peter Nassif) can behave openly inappropriate and nothing is done. Dr. Nassif has a reputation of abuse and sexist behavior toward women. Ask any female that has ever taken a class with him.
I have since completed my B.S. degree and went to work at Tufts University, MIT and I currently work at UCSD in San Diego. I am a Staff Research Associate III /Lab Manager and the senior staff in our laboratory.
I have attached my recent resume with my most current publications.
I, Glenda M. Batzer of 18635 Caminito Cantilena#202, San Diego California
do swear under the pains and penalties of perjury that all of the following is true and to
the best of my knowledge.

_____    1/~~O (-O-~
Glenda M. Batzer                    Date

## AFFIDAVIT

I, Donald F. Karp, hereby depose and say:

That on January 5, 2001, 1 was hired by MassBay Community College, to fill the position of *Laboratory Manager in the Division of Science and Engineering, of which Dr. Bruce Jackson was* a Professor and Department Chairman of Biotechnology.

I have a Masters degree in Microbiology and have worked in many small laboratories gaining many skills besides the bench work, as is commonly needed by small companies. This included managerial and administrative experience.

At the start of my employment, the Dean of the Department, Dr. Ghazi Darkazali, toured me around the Department laboratories, including the Biotechnology labs, at which point he specifically mentioned to me that part of my duties would involve determining why so much money was spent on regular maintenance fees: if the work was in fact done, and if it was necessary. I cannot remember the exact words, but the implication was that I was to be checking up on the expenditures for which Dr. Jackson and his department were making.

The Biotechnology labs were taken care of by Dr. Jackson's students, and as this was a research facility, it was run differently than the rest of the labs for which I was responsible.

Other duties included supervision of laboratory assistants. Together we were responsible for *having lab experiments set up for teachers and cleaning up afterwards for seven or more types of* classes. I was also responsible for ordering supplies and maintaining equipment in good working order, keeping stocks of supplies in good order, and seeing that safety equipment and hazard disposal met standards. Part of my function was to prevent duplicate orders to save funds.

I did not notice any deviations from lab cleanliness or order or dangerous situations any more than other labs in the facility or any greater than a normal research facility. In fact the level of neatness was very high, in my opinion.

I noticed that the Biotechnology Department had a large budget, and often had more problems than other departments within Science and Engineering, in obtaining purchase order numbers for ordering supplies.

To conclude, I admire Dr. Jackson in creating and maintaining a very high quality research/ teaching lab, at the level of a graduate school, at this junior college, even in the midst of what I observed was constant harassment from the administration. When I asked why he does not leave, his answer was his high regard for the students and the good feelings he has about filling their needs, in spite of the hardships.

Sworn to under the pains and penalties of perjury this day of the 30`'" of July, 2002.


Donald F. Karp

## AFFIDAVIT

1. My full, true, and correct name is Sarmad Saman. I am a permanent iesident of the United States, currently making this affidavit regarding Dr. Bruce Jackson's case against Lindsay Norman and others. I am currently employed at the Massachusetts Bay Community College.

2. I was born in Baghdad- Iraq on April 5$^{t}$ 1962.

3. In January 2003 while being hired by Massbay Community College to fill a position vacant due to a retirement of a Faculty member, I was informed by the then Associate Dean Tom Sabbagh that both Dr. Jackson & Panse were fired & this decision was taken by the then President Norman during a Retreat in 2002. 4. I was also told that in the same meeting that Norman told Ghazi Darka7alli and Tom Sabbagh that both Bruce Jackson and Chandra Panse must be fired. 5. As far as I know they were fired later that summer.

SIGNED UNDER THE PAINS AND PENAL iiES OF PERJURY THIS 15$^{t}_{h}$ DAY OF January 2007.

*[signature]*

Sarmad Saman